IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


ADAM JOSHUA FEELEY, et al.      :      CIVIL ACTION
                                :
            v.                  :
                                :
                                :
                                :
SUNTRUST BANK, et al.           :      NO. 12-4522


MEMORANDUM

McLaughlin, J.                                February 19, 2013


        This case arises out of securities transactions made by
defendants William Crafton, Jr. and Martin Kelly Capital
Management, LLC (MKCM) on behalf of the plaintiffs, their former
clients.  The plaintiffs allege that these transactions breached
their contractual relationship with the defendants and violated
Sections 10(b) and 20(a) of the Securities Exchange Act.  The
defendants have moved to compel arbitration, or, in the
alternative, to dismiss the case.  The Court grants the
defendants' motion to compel arbitration.  Because it need not
decide the defendants' motions to dismiss at this time, it
denies those portions of the motions without prejudice.  This
matter is stayed pending further order from the Court.

I.    <u>Factual and Procedural Background</u>[1]

The plaintiffs, current or former professional athletes, engaged the financial services of defendant William Crafton, Jr., sometime in or around 2006-07.  At that time, Mr. Crafton was employed at defendant Martin Kelly Capital Management, LLC (MKCM).  In approximately December 2009, MKCM was purchased by defendant SunTrust Bank, and Mr. Crafton was announced as head of SunTrust's office in San Diego, CA.  Compl. ¶ 11-15.

Around August 2010, the plaintiffs became aware that the Securities and Exchange Commission (SEC) was investigating the Westmoore Fund, a fund in which Mr. Crafton had made major investments on the plaintiffs' behalf.  Around the same time, the plaintiffs were made aware that their investments were "essentially worthless."  Mr. Crafton's position at SunTrust was terminated around February 2011.  <u>Id.</u> ¶ 44-47.

The plaintiffs filed their complaint in federal court on August 9, 2012.  They alleged that throughout the course of their relationship, Mr. Crafton misrepresented the types of

---

[1]  The facts above are taken from the plaintiffs' complaint and from the parties' moving papers and attached exhibits.  In deciding a motion to compel arbitration, the Court gives the party opposing arbitration "the benefit of all reasonable doubts and inferences that may arise."  <u>Kaneff v. Del. Title Loans, Inc.</u>, 587 F.3d 616, 620 (3d Cir. 2009).

investments he made on their behalf.  Contrary to his
representations, he made investments in high-risk, alternative
fields, "which were Ponzi schemes or other fraudulent
investments run, managed, controlled, operated and/or created by
individuals with whom Crafton had a personal relationship,
business dealings or kick-back agreements."  As a result,
plaintiffs seek from the defendants the full amount of their
investment and fees paid out to Mr. Crafton, plus compensatory
and punitive damages.  Id. ¶ 31, 142.

The defendants Crafton, MKCM, and SunTrust have submitted
near-identical motions to compel arbitration, or, in the
alternative, to dismiss.  Docket Nos. 6 (SunTrust), 7 (Crafton
and MKCM).  The evidence the parties have submitted with regard
to the motions to compel arbitration are described below.


A.   Documents Regarding Client Engagement

First, the defendants have attached a copy of executory
agreements between MKCM and plaintiffs Feeley, Celek, and
Curtis.  Def. Crafton Mot. to Compel, exh. 4-6 (Docket No. 7).
These agreements existed in two forms:  Mr. Celek entered into a
"client engagement agreement" and Mr. Feeley and Curtis entered
into "financial services agreements" (henceforth known

3

collectively as "services agreements").  Each agreement included
a signature of the named plaintiff, and each contained an
identical "Arbitration Provision," providing in relevant part
"that any controversy between the Adviser and the Client arising
out of Adviser business or this agreement, shall be submitted to
arbitration conducted under the provisions of the commercial
arbitration rules of the American Arbitration Association."[2]  Id.
The arbitration provision is located on the same page as the
three plaintiffs' signatures.  There is no copy of any services
agreement between Mr. Crafton and the fourth plaintiff, Heather
Mitts, in the record in front of the Court.

In addition to the services agreements described above,
defendant SunTrust also offer as exhibits four letters dated
October 26, 2009, entitled "Re: Transaction with SunTrust Bank,"
which were sent by Mr. Crafton on behalf of MKCM to all four

---

[2]  It further provides that "[a]rbitration must be commenced by
service upon the other party of a written demand for arbitration
or a written notice of intention to arbitrate, therein electing
the arbitration tribunal.  In the event the client does not make
such election within five (5) days of such demand or notice,
then the Client authorizes the Adviser to do so on the Client's
behalf.  Judgment upon any award rendered by the arbitrators
shall be final and may be entered in any court having
jurisdiction thereof.  This clause does not constitute a waiver
of any right including the right to choose the forum, whether
arbitration or adjudication, in which to seek resolution of
disputes."  Id.

plaintiffs.  Def. SunTrust Mot. at exh. B (Docket No. 6-1).
These letters state that "by signing below, you[] consent to the
assignment of your client engagement letter to SunTrust."  Id.
at 2.  On the same page as the language regarding the assignment
of the client engagement agreements to SunTrust, all four
letters are signed by the plaintiffs.

>        B.    Certification of William Crafton

        The defendants have also provided the certification of
Mr. Crafton, which states his understanding as to the services
agreements.  Crafton Cert. (Docket No. 19).  In this
certification, Mr. Crafton stated that it was protocol to
execute services agreements describing the company's investment
services and fee structures.  Id. ¶ 4-5.  He further stated that
"MKCM would not have provided investment-related services
without an executed Agreement."  Id. ¶ 5.  Mr. Crafton recalls
that in accordance with standard client procedure, all four
plaintiffs executed services agreements with MKCM.  Id. ¶ 3-4.
He stated that Mr. Feeley's and Mr. Celek's agreements were
executed in his presence and Mr. Curtis mailed his copy to him.
Id. ¶ 6, 8-9.  Mr. Crafton did not have Ms. Mitts' agreement in

his possession and had no further recollection other than it
being signed.  Id. ¶ 7.


        C.    Certification of Adam Fein

        The plaintiffs have provided the certification of Adam
Fein, a client manager at MKCM and SunTrust and employee of Mr.
Crafton.  Pl. Opp., exh. A (Docket No. 15).  Mr. Fein stated
that Mr. Crafton "routinely instructed . . . members of his
staff to use scanned images of [a] player's signatures and apply
it onto documents that the player had never seen, read, or
actually signed."  Id. ¶ 7.  Mr. Fein offered further
clarification that "[m]ost of Billy's clients had client
engagement agreements and SunTrust did require them to fill out
engagement letters."  Id. ¶ 13.


 II.  Analysis

        The defendants have moved to compel arbitration based on
the two sets of correspondences described above: 1) the client
services agreement, and 2) the assignment of such agreements to
SunTrust Bank.

        By federal statute, arbitration agreements are "valid,
irrevocable, and enforceable, save upon such grounds as exist at

law or in equity for the revocation of any contract."  9 U.S.C.
§ 2.  In the Third Circuit, a district court deciding whether to
compel arbitration must determine that a valid agreement to
arbitrate exists and that the particular dispute falls within
the scope of the agreement.  Kirleis v. Dickie, McCamey &
Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009).  The Court
makes such a determination under a summary judgment standard,
giving the party opposing the motion the benefit of all
reasonable doubts and appropriate inferences.[3]  Kaneff v. Del.
Title Loans, Inc., 587 F.3d 616, 620 (3d Cir. 2009).

   To determine whether there is a valid agreement to
arbitrate, the district court considers "ordinary state-law
principles that govern the formation of contracts."  Kirleis,
560 F.3d at 160.  General contract defenses, such as fraud,
duress, or unconscionability, may apply.  Doctor's Associates,
Inc. v. Casarotto, 517 U.S. 681, 687 (1996).

---

[3]  Under the summary judgment standard, the Court considers the
parties' arguments that are supported by facts in the record,
including evidence set forth in affidavits or declarations.
E.g., El v. SEPTA, 479 F.3d 232, 238 (3d. Cir. 2007).  In making
this determination, a court may, but is not required, to order
discovery or schedule an evidentiary hearing.  See, e.g., Wolff
v. Westwood Mgmt., LLC, 558 F.3d 517, 521 (D.C. Cir. 2009);
Ameriprise Fin. Servs., Inc. v. Etheredge, 277 Fed. Appx. 447,
449 (5th Cir. 2008).

Pointing to Mr. Fein's certification and to the arguments made in their opposition briefs, the plaintiffs dispute the existence and authenticity of the services agreements.  After considering all of the evidence on the record, the Court is satisfied as to the authenticity of the services agreements.  The Court holds that there is no genuine issue that the services agreements existed, and that these agreements detailed the binding arbitration in the event of contractual disputes and were signed by the plaintiffs.

The Court's analysis relies upon the documents themselves as well as the certifications regarding the documents.  The defendants have provided copies of three[4] of the four services

---

[4]  With regard to the plaintiff Ms. Mitts, the defendants have not provided a copy of any services agreement signed by her. However, Ms. Mitts has not filed any sworn testimony stating that she did not sign such an agreement.  Moreover, the complaint alleges that she, along with the plaintiffs, "enter[ed] into a contract," resulting in a "contractual relationship" between plaintiffs and defendants (and a subsequent breach of these relationships).  Compl. ¶ 108-110. The "contract" for the other three plaintiffs each includes this arbitration provision, and Mr. Crafton stated in his certification that this contract is a standard and essential part of the formation of an investment-related relationship. Crafton Cert. ¶ 4-5.  He has also stated that Ms. Mitts executed this agreement, but he does not have it in his possession.

Courts have held that signed copies of arbitration agreements are not necessary to compel enforcement, so long as there is sufficient alternative evidence in the record as to the

agreements signed by Mr. Feeley, Mr. Celek, and Mr. Curtis.  The agreements have distinct signatures affixed on the bottom, and the Arbitration Provision is delineated almost directly above the signatures.  This format (the signature directly under disputed language) is also observed in the 10/26/09 agreements assigning the plaintiffs' rights to SunTrust Bank.

    In addition, Mr. Crafton has provided a certification stating not only that such agreements were executed by the plaintiffs, but that such agreements are standard protocol for MKCM's client relationships.  The Court is persuaded by Mr. Crafton's explanation that because the agreement describes the fee structure for the financial relationship and other important provisions, "MKCM would not have provided investment-related services without an executed Agreement."  Crafton Cert. ¶ 5.

    In their brief in opposition, the plaintiffs deny signing any service agreements.  Notably, however, the plaintiffs did

---

terms and conditions of the agreement.  See, e.g., Banks v. Mitsubishi Motors Credit of Am., 435 F.3d 538, 539-40 (5th Cir. 2005); Clerk v. ACE Cash Express, Inc., No. 09-5117, 2010 WL 364450, at *2, n.2 (E.D. Pa. Jan. 29, 2010).  Because Ms. Mitts' allegations in her complaint stem from a contractual relationship with Mr. Crafton, and because she has not presented any evidence that she did not sign the services agreement signed by the other three, the Court does not consider the absence of her agreement to distinguish her position from those of the other three plaintiffs.

not provide any of their own sworn testimony, in a certification
or deposition, stating that they did not sign the agreements or
otherwise disputing the authenticity of these agreements.  A
party cannot rest only on assertions and statements made in its
briefs without making reference to facts in the record.  El v.
SEPTA, 479 F.3d at 238; see also Pastore v. Bell Tel. Co. of
Pa., 24 F.3d 508, 511 (3d. Cir. 1994) ("Once the moving party
has carried the initial burden of showing that no genuine issue
of material fact exists, the nonmoving party cannot rely upon
conclusory allegations in its pleadings or in memoranda and
briefs to establish a genuine issue of material fact.").
Without an affidavit or other form of sworn testimony from the
plaintiffs or another party with knowledge stating to this
effect, the Court does not find any genuine issue of material
fact.  See, e.g., Black v. JP Morgan Chase & Co., No. 10-848,
2011 WL 3940236, at *5 (W.D. Pa. Aug. 25, 2011).

Even taken in the light most favorable to the plaintiffs,
Mr. Fein's certification provides no genuine issue as to the
authenticity of the services agreements.  Mr. Fein stated that
Mr. Crafton had in some instances instructed his staff to
falsify signatures, but he does not refer to any documents
signed by these particular plaintiffs, and certainly makes no

reference to the services agreements at issue.  In fact, Mr.
Fein also stated that "[m]ost of Billy's clients had client
engagement agreements and SunTrust did require them to fill out
engagement letters."  Fein Cert. ¶ 13.  Such language seems to
exclude engagement agreements from his allegations of
falsification.  Therefore, the Court holds that the plaintiffs
have not submitted sufficient evidence in support of their
position.

Further, the Court does not see any reason to hold an
evidentiary hearing on the issue of authenticity.  The
plaintiffs' position, as stated in their filing papers and in
their opposition to these motions, is that they do not recall
signing the services agreements.  See, e.g., Pl. Opp. at 5, 27.
It is doubtful that the plaintiffs would be able to introduce
any fact of relevance to the Court.[5]  Moreover, the evidentiary

---

[5]  Testimony that the plaintiffs do not recall signing these
documents is insufficient.  It is well-established that failure
to read a contract does not excuse a party from its binding
formation.  Indeed, the Third Circuit has held that
"[c]ontracting parties are normally bound by their agreements,
without regard to whether the terms thereof were read and fully
understood."  Schwartz v. Comcast Corp., 256 Fed. Appx. 515, 520
(3d. Cir. 2007) (internal citations omitted); see also
Federowicz v. Snap-On Tools Corp., No. 91-3425, 1992 WL 55723,
at *4 (E.D. Pa. Mar. 12, 1992); Al-Thani v. Wells Fargo & Co.,
No. 8-1745, 2009 WL 55442, at *6 (N.D. Cal. Jan. 7, 2009).

record in front of the Court includes copies of most of the
relevant documents, and the Court sees no need to review the
originals.  <u>See</u> Fed. R. Evid. 1003 ("A duplicate is admissible
to the same extent as the original unless a <u>genuine question</u> is
raised about the original's authenticity.") (emphasis added);
<u>see also</u> <u>Clerk v. ACE Cash Express, Inc.</u>, No. 09-5117, 2010 WL
364450, at *2, n.2 (E.D. Pa. Jan. 29, 2010) ("[T]he fact that
these documents have been lost or destroyed does not prevent
their enforcement.").

      Because the Court holds that there is no issue of genuine
fact as to the authenticity of the services agreements, the
Court must also consider whether the instant dispute is within
the scope of the arbitration provision.  The Court holds that
there is no issue of genuine fact that the arbitration
provisions were triggered by the dispute in the instant case.
The provision includes "any controversy between the Adviser and
the Client arising out of Adviser business or this agreement."
<u>See</u> Def. SunTrust Mot., exh. B, ¶ 22.  The complaint filed by
the plaintiffs alleges a number of breaches of duty, including
that the defendants violated contractual covenants of good faith
and fair dealing, as well as S.E.C. violations that purported to
occur during the course of Mr. Crafton's financial relationship

with the plaintiffs.  Compl. ¶ 111; id. at 64.  Without any
valid argument to the contrary, such allegations fall within the
realm of "Adviser business," and, accordingly, the Court grants
the Defendants' motions to compel arbitration in the manner set
forth in their respective services agreements.

An appropriate order shall issue separately.